# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA *ex rel*  )
**BASHAR SEAN AWAD** and )
**CYNTHIA MCKERRIGAN,** )
     )
      **Plaintiffs,** )
     )
**v.** )
     )   Case No. 16-2034-CM-JPO
**COFFEY HEALTH SYSTEM,** )
     )
      **Defendant.** )
     )

## MEMORANDUM AND ORDER

Relators Bashar Sean Awad and Cynthia McKerrigan move for an award of reasonable attorneys' fees, costs, and expenses incurred pursuant to prosecuting claims against defendant Coffey Health System on behalf of the United States of America under the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"). (Doc. 26.)

### I. FACTUAL BACKGROUND

On January 15, 2016, relators filed a complaint in this District, alleging violations of the FCA against defendant. Relators served a disclosure statement upon the Department of Justice ("DOJ"). The DOJ initiated an investigation into the substance of the complaint, eventually intervening in the action on May 23, 2019. The matter resulted in a $250,000 global settlement on the same day, resolving relators' claims. The settlement provides for recourse to court resolution if the parties are unable to resolve disputes as to attorneys' fees. The parties were unable to resolve their disagreements concerning attorneys' fees, so relators' counsel ("fee counsel") submitted the matter to the court.

The court concluded that fee counsel's pre-reply submissions lacked detailed support for much of their requested award, and their supporting affidavit, while helpful, did not sufficiently enable court

-1-

oversight.  However, fee counsel did submit more-detailed records on reply brief.  Because this timing denied defendant the ability to dispute particular billing entries, the court ordered re-submission of detailed support followed by supplemental briefing.[1]  Recognizing defendant's concern that it had already briefed most of the arguments relevant to this motion, the court relieved the parties of re-briefing already-submitted arguments, limiting briefing to "(1) hours that counsel believes to be non-billable, and (2) other vagueness warranting a reduction." (Doc. 34, at 1.)  The parties have supplemented briefing as directed, and the court is ready to rule.

## II.     LEGAL STANDARDS

Under the FCA, a prevailing party "shall also receive an award an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. . . . awarded against the defendant."  31 U.S.C. § 3730(d)(1).  This case resulted in a settlement of relators' FCA claims, and the parties agree that relators are prevailing parties. Accordingly, relators are entitled to compensation, subject to ordinary scrutiny of reasonable attorneys' fees and costs.

A reasonable attorneys' fee award begins with a calculation of the lodestar figure, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate[.]" *Anchodo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The party seeking fees "bears the burden of showing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998) (citing *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)).  With the aid of meticulous and contemporaneous billing records, fee counsel must "prove and establish the reasonableness of each dollar, each hour,

---

[1] It appears from the record that while fee counsel eventually submitted their detailed billing support on reply briefing, this support was not produced to defendant during conciliation under our local rules or otherwise prior to reply briefing.  The purpose of conciliation in the local rules is to encourage resolution of these disputes without submission to court.

above zero." *Mares*, 801 F.2d at 1210; *see Jane L. v. Bangerter*, 61 F.3d 15015, 1510 (10th Cir. 1995).

The court must examine fee counsel's request and exclude any hours that are inadequately supported or not reasonably expended. *See Hensley*, 461 U.S. at 434; *Case*, 157 F.3d at 1251–52. The court will

> carefully scrutinize the total number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done.

*Joseph A. by Wolfe v. N.M. Dept. of Human Servs.*, 28 F.3d 1056, 1060 (10th Cir. 1994) (citing *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). This review for "billing judgment" recognizes that "hours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)); *see also Pennsylvania v. Del. Valley Citizen's Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 487 U.S. 711 (1987) ("if plaintiffs . . . may engage a lawyer based on the statutory assurance that he will be paid a 'reasonable fee,' the purpose behind the fee-shifting statute has been satisfied.").

### III.   DISCUSSION

Fee counsel request compensation of $250,118.75 in attorneys' fees and $3,586.55 in unreimbursed expenses across 824.00 hours of work. For attorneys' fees, fee counsel request compensation for four categories of timekeepers: Mr. Seely, the partner on the case; Mr. Templeton, an associate; paralegals; and several corporate research staff.

-3-

| Timekeeper | Hours |
|---|---|
| Seely | 149.50 |
| Templeton | 396.75 |
| Paralegals | 41.75 |
| Corporate Research | 236.00 |
| Total | 824.00 |

Defendant makes multiple challenges to fee counsel's request: (1) duplicate billing and billing for non-billable work, especially for conferences and strategy meetings; (2) inadequate support for multiple entries due to excessive redaction, block billing, and vagueness; and (3) unreasonable rates requested for paralegals and "Corporate Research" professionals. Fee counsel respond by disagreeing on all counts and noting that significantly fewer than the challenged "strategy meeting" entries actually correspond to an inter-office strategy meeting. The court addresses defendant's first two arguments now, beginning with redaction.

### A. Redactions

There is no *per se* rule mandating a reduction merely because a party partially redacts some—or even many—entries. Rather, redaction is merely one practice that can impact the court's ability to determine and approve the hours billed. In some instances, counsel's use of redaction will be "inconsequential because the information remaining [in the entries and on the record] is sufficient to show the nature of the work performed by the attorneys." *Flohrs v. Eli Lily & Co.*, No. 12-2439-SAC, 2013 WL 3947152, at *4 (D. Kan. July 31, 2013). In others, redaction may be so great that the entry cannot make the required showing. *Id.* (disallowing fees when only remaining text was "Consider issue," "forward to client," or party names); *see Heavy Petroleum Partners, LLC v. Atkins*, No. 09-1077-EFM, 2013 WL 6858509, at *2 (D. Kan. Dec. 30, 2013) (rejecting entirely redacted entries). In application, this challenge is not significantly different than one to imprecise task descriptions.

The court recognizes and agrees with fee counsel's argument that defendant has largely disregarded any additional context provided by Mr. Seely's supporting affidavit and the limited record.

But this additional context saves only a few, not all, redacted entries. Even with added context, the only remaining information in several entries is some variant of "Research," "Emails," "Call," "Review," or similarly generic descriptor, frequently with no way for the court to tell whether this work is either billable or even related to the instant case. *See Case*, 157 F.3d at 1252. Other entries suggest that work may be in support of a particular goal, but then redact (presumably) the entire description of the work done. This sort of redaction prevents the court from verifying that counsel's hours are compensable, and so these hours are disallowed.[2] Accordingly, the court disallows 11.5 hours billed by Mr. Seely, 32.25 hours billed by Mr. Templeton, 4.5 hours billed by paralegals, and 50.50 hours billed by corporate research staff.[3] The court turns to whether the remaining entries are properly billable.

### B. Billing Judgment, Block Billing, and Vagueness

Defendant argues that fee counsel's records reflect non-billable and over-billed work, that this work is often block-billed, and that many task descriptions are insufficient to support an award. Block-billing does not disqualify fee counsel's hours in this circuit, but may, similarly to redactions and general vagueness, cause an entry to provide insufficient support for compensation. *See Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (citing *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998)).

Some oversights are understandable (though not compensable) when, as here, fee counsel prepare three years of records for submission. Fee counsel's records reveal billing for background

---

[2] The court allows entries supported by sufficient context. Although some redactions result in an entry where the only remaining work—whether block-billed or not—is clearly not billable, the court addresses these issues in its evaluation for billing judgment.

[3] The hours disallowed for corporate research, by timekeeper, are: 25.25 hours for Jamie L. Collins (JLC); 5.5 hours for Michelle B. Gaulin (MBG); 11.75 hours for Alexandra S. Kearns (ASK); 4.5 hours for Alvin N. Chan; and 3.5 hours Brennan P. Whalen. Although fee counsel bill for paralegals as a group, the only disallowed hours billed by paralegals are for timekeeper Anne Marie Miller (AMM).

-5-

research, non-productive travel, and clerical tasks—all of which are not compensable.[4] The court is not persuaded that fee counsel's occasional block-billing is as severe as contemplated by defendant's authority, but addresses both block-billing and general vagueness where relevant within defendant's other arguments on billing judgment.

1. Meetings and Conferences

Defendant argues that every mention of "strategize" by Mr. Seely and use of the "Strategy" billing code by staff corresponds to an over-billed inter-office meeting or joint work. Fee counsel respond that defendant is mistaken, and not every usage of "strategize" indicates duplicative billing for an inter-office meeting or joint work. While the court agrees that not *every* instance of the "Strategy" code[5] or "strategize" indicates an inter-office strategy meeting, conference or duplicate billing, many do; fee counsel have frequently double-billed—and sometimes triple-billed—for meetings, conferences, and other work.

The duplication of hours for conferences and inter-office meetings justifies a reduction. *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2009 WL 57133, at *2 (D. Kan. Jan. 8, 2009) (citing *Geismann v. Aestheticare, LLC*, No. 07-2575-KHV, 2008 WL 2549009, at *2 (D. Kan. June 24, 2008)); *see Hensley*, 461 U.S. at 434. Fee counsel's records show that several timekeepers often bill for the same meetings and conferences, so the court disallows the duplicative hours of less-senior timekeepers. To the extent that duplicate billing for a meeting or conference is also block-billed with other clearly non-billable hours, such as clerical work, the court further disallows those hours.[6] Where fee counsel have duplicated billing for meetings and conferences in a block with otherwise

---

[4] To the extent the court could consider an inference in favor of compensation for disallowed redacted tasks, the probable inclusion of similar non-compensable work prevents doing so.
[5] (*See generally* Doc. 30-1.) A review of fee counsel's records attached to their reply brief, which included billing codes, shows that the "Strategy" code is used for a wide variety of work.
[6] (*See, e.g.*, Doc. 33-1, at 4 (10/8/2015, triple-billing for one-hour strategy meeting, further including hours "circulat[ing] research resource documents").)

compensable work, the court disallows the duplicate time attributable to the meeting. Accordingly, the court disallows 6.5 hours billed by Mr. Templeton, 1.0 hour billed by paralegals, and 29.0 hours billed by corporate research staff.[7]

The court allows the few hours where the need for additional counsel is supported by the record, such as the 5.0 hours billed by both Mr. Seely and Mr. Templeton between 3/16/2016 and 3/17/2016 for client meetings with relators in Kansas. (Doc. 33-1, at 8.) These hours, supported by Mr. Seely's declaration, represent effort where additional counsel is reasonably necessary and expected, rather than duplicative. (Doc. 26-2, at 3 (explaining preparation for and meeting with government in Kansas).) Similarly, the court allows junior timekeeper hours where senior timekeepers were present but did not bill, but limits these hours to one timekeeper.

### 2. Background Research, Clerical Tasks, and Travel

As noted above, time billed for basic background research, clerical tasks, and non-productive travel is ordinarily not compensable. *See Case*, 157 F.3d at 1253 (research); *Ramos*, 713 F.2d at 559 (travel); *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1257 (D. Kan. 2017) (clerical tasks). Fee counsel have billed for all three, and a reduction is warranted for these ineligible hours.[8] Where fee counsel have block-billed ineligible hours with compensable work, the court divides the block-billed time by the number of tasks, and disallows the fraction of hours corresponding to ineligible work.[9] The court disallows 12.0 hours billed by Mr. Seely, 24.25 hours by Mr. Templeton, 4.25 hours by paralegals, and 41.25 hours by corporate research staff.[10]

---

[7] The court disallows 14.5 hours each from corporate research timekeepers JLC and MBG, and 1.0 hour from paralegal AMM.
[8] (*See, e.g.*, *id.* at 4, 5, 7, and 8 (billing for printing, preparing binders, password-protecting files, service research, travel plans, and non-productive travel).)
[9] (*See, e.g.*, *id.* at 2, 6 (block-billing ineligible background research or clerical tasks with compensable drafting or final review of complaint).)
[10] The court disallows 31.25 hours from JLC, 10.0 hours from MBG, and 4.25 hours from paralegal AMM.

### 3. Excess

Finally, the court reviews counsel's billing judgment for reduction of excessive hours. *See Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1277–78 (D. Kan. 2002) (disallowing "clearly excessive" hours unsupported by detailed explanation). Defendant challenges the several tasks billed as excessive. As to the complaint, the court agrees. Mr. Templeton billed many hours on the initial disclosure memo in this case, at least 94 predating the complaint, yet billed another 63 hours solely on drafting the complaint. While the court understands the work involved in compiling disclosure for a multi-year fraud claim, fee counsel's time investment is unreasonable for drafting a complaint.

The complaint is a 19-page document: at least eight pages are either basic formatting requirements or boilerplate claim language; approximately four pages contain specific allegations against defendant; and nearly all remaining language is devoted to background information on the relevant Medicare/Medicaid incentive structure. (Doc. 1.) This is the same background information that would have been prepared in the course of the required disclosure memo, for which fee counsel has separately billed. In fact, fee counsel's records reflect dozens of hours in supporting research, writing, and meetings between staff across both the complaint and the initial disclosure memo. (*See* Doc. 33-1, at 2, 5–6.) It is unclear whether Mr. Templeton unnecessarily duplicated the work of supporting staff, or if many of these drafting or supporting hours were not actually productive time. The court disallows 75%—47.25—of these drafting hours as unreasonably excessive.

In total, the court disallows 23.5 hours billed by Mr. Seely, 110.25 hours billed by Mr. Templeton, 9.75 hours billed by paralegals, and 120.75 hours billed by corporate research staff. The court turns now to fee counsel's requested rates.

### C. Reasonable Rate

Fee counsel bear the burden of establishing the reasonableness of their requested rates. This burden is met by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The court requires similar evidence for the rates of supporting staff. *Case*, 157 F.3d at 1255. Fee counsel request the following rates for their attorneys and staff:

| Timekeeper | Rate |
| --- | --- |
| Seely | $425 |
| Templeton | $335 |
| Paralegals | $250 |
| Corporate Research | $200 |

Mr. Seely's declaration states that he has over 25 years of experience in complex civil and criminal litigation, that Mr. Templeton has extensive experience in preparing pleadings and other materials in complex civil litigation, and notes that the court has previously approved similar rates for similarly-experienced attorneys. (Doc. 26-2, at 5.) Fee counsel submit no evidence of reasonable fees in the relevant market—Kansas City, Kansas—for their other staff, but refer the court to at least one case approving staff compensation of $150. *Paraham v. Atriums Mgmt. Co.*, No. 16-2539-CM, 2019 WL 1434965, at *10 (D. Kan. Mar. 29, 2019). Defendant agrees that fee counsel's requested rates for Mr. Seely and Mr. Templeton are reasonable, but argues that the requested rates for other staff are excessive. Defendant asks the court to recognize fee counsel's own billing hierarchy for staff, and as the court did in *Ross*, reduce the rates for fee counsel's paralegals and corporate research staff to $130 and $100, respectively. *See Ross v. Jenkins*, 325 F. Supp. 3d 1141, 1182 (D. Kan. 2018).

The court agrees with defendant. Fee counsel's rate hierarchy suggests that their "Corporate Research" staff are legal assistants or similarly-compensated personnel, and fee counsel's citation to

prior rates generally ignores the facts and circumstances making the cited rates reasonable. Contrary to fee counsel's suggestion, the court did not approve a blanket rate of $150 for any "staff member" in *Paraham*; rather, it approved several rates between $65 and $150, commensurate with each timekeeper's experience and the plaintiffs' exhaustive supporting evidence for each timekeeper. *See Paraham*, 2019 WL 1434965, at *10. Fee counsel have provided no similar support justifying an increased rate. The court finds that $100 is a reasonable rate for fee counsel's corporate research staff, and $130 is a reasonable rate for fee counsel's paralegals.

### D. *Johnson* Factors

Once the court calculates a lodestar figure, it considers whether an adjustment is appropriate by applying the factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The lodestar is presumed to be an appropriate fee and adjustments are the exception to the rule. *Anchodo*, 616 F.3d 1098, 1103 (10th Cir. 2010). Many of the *Johnson* factors are usually answered through the court's initial lodestar calculation, and some may have no application in a particular case. *See Hensley*, 461 U.S. at 434 & n.9. The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the case; (3) the skill required to perform the legal service properly; (4) preclusion of other employment by fee counsel; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Defendant asks the court to apply a downward adjustment, arguing that this was a relatively simple case where fee counsel's success was near-certain and the requested award is not commensurate with the settlement achieved. Fee counsel responds that this was a complex healthcare fraud case

requiring substantial skill, taken on a contingent fee, and that precluded other employment during this case. The court has carefully considered the *Johnson* factors. Most are answered within the lodestar analysis. Others bear little or no weight in this case. Still, to the extent that they are not already considered within the calculation, the court addresses the parties' arguments.

While the relatively basic fraudulent conduct alleged here meant that this was not a difficult legal case, it required a substantial threshold understanding of detailed Medicare/Medicaid requirements and incentives. The court further recognizes the contingent nature of the fee and partial preclusion of other work and agrees that fee counsel's extensive experience in healthcare litigation and FCA matters is relevant. These factors weigh neither strongly in favor nor against an adjustment.

Finally, defendant's protest that the requested fee is not commensurate with the settlement, as far as this argument is relevant to the eighth *Johnson* factor, is unpersuasive. Disproportionality between a settlement and requested fee in conduct-deterring litigation does not necessarily indicate an unfavorable result. Indeed, similar results may be common in civil rights litigation where cash damages are low, but the corrective value of an injunction would be great. Here, the purpose of the FCA is to provide a means for addressing fraud against the government. The government's interest is served by putting an end to potential ongoing fraud, and the government may serve this interest by ending the potentially offending conduct through settlement. The court does not find a settlement that serves these goals an unfavorable result. Accordingly, the court finds no adjustment necessary.

In total, the court allows 126.0 hours for Mr. Seely, 286.5 hours for Mr. Templeton, 32.0 hours for paralegals, and 115.25 hours for corporate research staff. Under the rates above, the court allows $165,212.50 in attorneys' fees, with no adjustment from the *Johnson* factors.

### E. Costs

Fee counsel further request $3,586.55 in unreimbursed expenses, as follows:

| Expense | Cost |
|---|---|
| Travel & Meals | $1,496.03 |
| Photocopies | $963.00 |
| Communications & Messaging | $295.86 |
| Filing/Service Fees | $429.66 |
| Total | $3,586,55 |

Fee counsel's primary support for these expenses is Mr. Seely's affidavit, which states that these costs were incurred in connection with this case and are of the type ordinarily charged. (Doc. 26-2, at 6.) Defendant asks the court to deny all compensation for expenses because fee counsel does not adequately differentiate between billable and non-billable expenses. *See Case*, 157 F.3d at 1258. The court agrees as to most expenses, but finds the request for "Filing/Service Fees" supported by the limited record. The other expenses are denied as inadequately supported in light of fee counsel's frequent billing for non-billable work. The court grants $429.66 in costs.

**IT IS THEREFORE ORDERED** that relators' Motion for an Award of Attorneys' Fees, Costs, and Expenses (Doc. 26) is granted in part and denied in part. Relators are awarded $165,212.50 in attorneys' fees and $429.66 in costs.

Dated this 19th day of December, 2019, at Kansas City, Kansas.

                              **s/ Carlos Murguia**
                              **CARLOS MURGUIA**
                              **United States District Judge**